THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDDIE LEE JENNINGS, Defendant-Appellant.

(No. 68-48;

Fifth District—February 16, 1971.

Morton Zwick, Director of Defender Project, of Chicago, (Norman W. Fishman, of counsel,) for appellant.

R. W. Griffith, Jr., State's Attorney, of Edwardsville, for the People.

PER CURIAM:

Defendant was found guilty by a jury in Madison County of the crime of aggravated battery in violation of ch. 38, par. 12-4, of the Illinois Revised Statutes, on February 9, 1968 and sentenced to imprisonment in the Illinois State Penitentiary for not less than three nor more than six years. His post trial motion was denied. He appeals.

Michael Terry Mitchell testified that on July 26, 1967, he was employed as a cab driver for the American Cab Company in the city of Alton and working the night shift. In the early morning of that date he took a passenger to Hampton and Elliot Streets in the city of Alton, an area commonly referred to as the "Mexico Area." As he headed west on Hampton he saw three or four young colored men around a green car who were about three or four car lengths from him. He was proceeding at a speed of about ten to fifteen miles per hour and just after he passed the three youths, he heard an explosion that sounded like a gunshot. He turned to look over his left shoulder and heard a second shot which struck the back window. He said he heard three or four shots in all. One of the bullets struck him in the face and wounded him badly. He radiod his dispatcher and stopped at Pearl and Broadway in Alton. After about a minute, an Officer Galloway from the Alton Police Department arrived and called an ambulance and he was taken to the hospital. He did not see the person who shot him.

The police later found that the rear window had been shot out of the cab and there were about four bullet holes in it. On July 29, Raymond Parton, a police sergeant in the Detective Bureau of the Alton Police Department arrested the defendant in the 1500 block of Belle Street in the city of Alton. He testified that he observed Jennings walking south in the 1500 block of Belle Street, that he pulled up beside him, got out of the car and had a conversation with him.

The trial judge then called a hearing out of the presence of the jury to determine whether any admissions made by the defendant were voluntary and Parton testified: "I first informed him he was being placed under arrest. I next advised him he did not have to talk to me; he had the right to an attorney and anything that was said could be used against him in a court of law; that he had a right to have an attorney present during the conversation." He also testified that he advised the defendant of the nature of the charge for which he was being arrested and that he had a right to remain silent. He then said he took the defendant to the Alton Police Department, booked him in and took the necessary information from him—his name, address and occupation. He then testified that he read a written statement to defendant which was substantially the same

as the oral warning he had given to the defendant when he first arrested him. The defendant then signed the written statement and Parton began his interrogation. He testified that the defendant admitted the shooting of the American Cab driver two nights previously. The defendant told him that he was with a group of youths, approximately four, when the cab drove by and someone made the remark that "someone ought to shoot that * * *" and then he described what was said as a vulgarity. Jennings fired three times at the cab and then left the area shortly afterwards with another youth. The officer further testified that he asked Jennings why he fired at the taxi driver and at first Jennings would not give him a reason, but then Jennings asked if he could make a phone call because he wanted to talk to his mother. He said Jennings talked to someone whom he assumed was his mother on the phone and told her he was jailed; that they had him in jail for shooting a cab driver and he admitted to the person he was talking to on the phone that he shot the cab driver. Jennings also told Parton that he did the shooting with a .38 and when he asked him where the gun was, he told him that he took the gun to St. Louis and sold it the next day. After that conversation the officer testified that he asked Jennings, "Isn't it true that the shooting of the cab driver and the other two shootings after that was done to cause trouble between the coloreds and whites?" Jennings said, "Yes."

After the hearing out of the presence of the jury, the trial court determined that defendant's admissions were voluntary and Parton then testified in the presence of the jury substantially as he had testified before the court.

The defendant testified in his own behalf and denied shooting the cab driver and denied that he was at that particular location on the evening of the shooting. Several alibi witnesses testified that the defendant was at home on the night of the shooting. Defendant further testified that Officer Parton arrested him on the 29th day of July, 1967 and took him to the police station. After arriving at the police station Parton told defendant he was arrested for shooting a cab driver. Jennings asked, "What cab driver?" and told Parton he did not know anything about it. He kept denying that he shot the cab driver and Parton kept telling him that he did it and that there was no use lying to him. He then testified that Parton made him angry so he said, "Yes, I did." Then Parton said, "Tell me how it happened," and Jennings said, "I didn't do it." He said that Parton called another officer in and he (Jennings) signed two papers, the first one he signed was concerning his rights and the second one was that he talked to the police. He said, "I wanted to find out what the problem was so I agreed to talk to them."

On cross-examination he again testified that he said he shot the cab driver because the police officer made him angry and he wanted to get him off his back.

Defendant first argues that the evidence presented disclosed that his oral admission was not made voluntarily. He bases this argument on the testimony of defendant that he repeatedly denied committing the battery in the face of police accusations to the contrary; that the arresting officer told him that he had a signed statement from a couple of witnesses who would name him as the assailant; that even after the admission he tried to induce him to sign a statement by promising that they would have the charges reduced to a misdemeanor if he would sign a statement; that all of the foregoing evidence plus the age of defendant, who was 18 years of age at the time, establishes that the defendant's oral statement was not voluntary.

■■ A finding that a confession has been voluntary will not be disturbed unless it is manifestly against the weight of the evidence or unless the court abused its discretion. (*People v. Gold*, 38 Ill.2d 510.) A review of the record reveals no reason for disturbing the trial court's finding that statements made to Parton were voluntary.

The appellant also contends that he was not proven guilty beyond a reasonable doubt because there was nothing to connect him to the crime other than his confession. Is proof that a crime has been committed plus defendant's admission that he committed it sufficient to sustain the conviction in this case? In *Bartley v. People*, 156 Ill. 234, the Supreme Court held that a conviction may be sustained upon proof that a crime has been committed and the confession of the accused that he was the person who committed it, although there is no other evidence of his identity. In *People v. Lueder*, 3 Ill.2d 487, the court said at page 488-89:

"The crime being clearly shown, independently of admissions or confessions, to have been committed by some person, the admissions or confessions freely or voluntarily made may be considered in connection with the other evidence to establish the *corpus delicti*, and it is sufficient if evidence of other facts and circumstances so fully corroborates the confession as to show the commission of the offense beyond a reasonable doubt."

■■ The defendant stated that he was in the "Mexico" area of Alton, sitting on a car with four other boys. The victim, Michael Terry Mitchell, testified that there were three or four colored boys around the car when he passed it immediately prior to being shot. The defendant stated to Sergeant Parton that he fired a .38 pistol three times at the cab. Corporal Logan stated there were three or possibly four bullet holes found in the cab. Mitchell testified that he heard three or four shots. The defendant

testified that Sergeant Parton did not inform him of any of the details of the investigation. When the confession and the facts corroborating the confession are considered as a whole, there can be no doubt that the proof was sufficient to prove defendant guilty beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.